It's in an arcane area of the law that the Supreme Court has imposed upon the lower courts in itself the last half dozen or six or eight years, and it has to do with the Armed Career Criminal Act, which provides increased penalties for people with prior records consisting of convictions of certain crimes. The issue in this case, or at least the core issue, is whether drug trafficking by purchase as defined in Florida law involves the possession with intent to distribute a controlled substance, or so I am positing the lawyers will argue the actual issue. But I think that last argument probably you can come in from the outside and it makes sense, you know, what is lascivious, what is the context in which images were taken in the mental state and how does that affect. I don't promise you that this argument is going to make as much sense, but that is not the attorney's fault and I hope it is not our panel's fault. It is the law that we are struggling with from the Supreme Court and the Supreme Court is struggling with. All right. Ms. Song. Did I mischaracterize things, counsel? No, you said it perfectly. Good morning. May it please the Court. Purchasing 28 grams of cocaine under Florida law is not a serious drug offense. I think you are going to need to talk a little louder. Is this better? Yes. Purchasing 28 grams of cocaine under Florida law is not a serious drug offense, regardless of whether an intent to distribute is inferred. Could you tell me what I couldn't? Last night I was looking into some Florida law and I couldn't find a pattern instruction in Florida law that defined what purchase is. It defines other parts of the statute, but maybe I missed it. What does the pattern instruction of Florida say as to what a purchase is? What are the elements? I haven't seen a definition for what purchase is in the pattern instructions. Florida case law makes clear that you can . . . Well, before you get to that, because I don't find Florida case law that clear, my question was, it seems to me people are rarely ever charged with purchase, but when they are, I was curious. I did see in the pattern the definition of sell, and sell means to transfer or deliver something to another in exchange for money or something of value. It would seem to me purchase would be the opposite, would be the person receiving the transfer or delivery. Exactly. The purchaser would be the end user, the person on the receiving end of that sale. Are you aware of any Florida convictions for purchasing where somebody has actually gotten purchased? Leave out the cases where there is a victim and they are talking about you should have charged purchase. Somebody actually convicted of purchasing that would not also involve possession by that person. Well, I think the two cases cited in this Court's decision in Shannon were examples that they weren't convicted of purchasing. I'm asking somebody who's actually been convicted of purchasing so we can infer from that what the elements of purchasing are. Well, I believe they were convicted of trafficking by purchase because that was critical to the Shannon court's decision in their reasoning because they made a fine distinction between the purchase conviction in those cases. Are you talking about Raw and Roberts? Right. But I thought neither of them. I thought both of them were charged with possession. No. I believe they were charged with purchase because that was critical to the Shannon court's reasoning as to why those were not controlled substance offenses and they distinguished their convictions from the trafficking by possession cases in the James case. So the fact... Well, Roberts starts out saying this is an appeal by the defendants from their sentences after a jury found them guilty of possessing and the court was concerned that really there had been no showing that they were near the drugs and, in fact, it doesn't look like there was even a purchase either because the court mentions that no agreement to purchase had been finalized. So, again, I'm just searching and you can't create a case if there's not one, but it would help me a lot to understand how much daylight there is between possession and purchase if I actually knew what purchase requires. Well, I think the daylight is that you don't have to possess in order to purchase. A lot of these purchase cases are people who were acting as brokers in some way, but I think that our Swider case actually is probably a better example of what Florida Purchase is and, in that case, the court was trying to... The Florida Appellate Court was trying to decide if their sentence of rehabilitation was appropriate. So I read that and that is the one case I found where somebody was actually convicted of purchase, but I didn't read anything in that case that indicated they didn't also possess the drugs. There wasn't any problem with, well, gee, you didn't possess it, but you purchased it. That whole case, as you said, was just about rehabilitation. So, again, I'm struggling to find that case. I do think it's kind of an idiosyncratic prong of the statute, but we know that, I think we can assume because they only discuss purchase in the Swider case and because that was so critical in that case to the discussion that we can look at that as an example of the least culpable conduct under the Florida Trafficking Statute. And as a threshold matter, the dictionary definition of purchase is to obtain by obtaining money or equivalent. To obtain. And, again, I'm not clear under Florida law that they would find someone guilty of purchase if there wasn't some obtaining of that which they had paid for. Well, I think you can make an arrangement and say that I'm going to give you money for it, but before you ever receive possession of the drugs, you will – you can be convicted of purchase. That's your guess, but we don't have any cases saying that. That's what this Court said in Shannon. That's precedential from this Court. That was critical to the Shannon court's holding. Shannon may have misinterpreted Florida law, and we are bound by Shannon to the – in which it was issued, which was a different context. It was a context where Judge Barkat was – was looking at elements. You had to have the elements and you had to match the elements, and you say, oh, I see purchase. I don't see purchase in the list under the guidelines. We're in the ACCA, which we've held in James N. White, as a broader standard. It's a standard that requires – that just requires involving. Well, I have a couple points to that. Shannon did not say that you had to have an elemental exact match. This Court has always held that prohibit in the guidelines does not require that you match up the elements. You can still infer an intent to distribute just like you can in the ACCA. And White did say that the ACCA is broader than the guidelines, but it did not say to what extent it is broader. And it's okay that it didn't, because we have plenty of precedent in this Court leading up to White that shows us that they are very similar. This Court has always treated the two very closely. Cases interpreting the guidelines have been treated as highly persuasive in cases looking at the ACCA and vice versa. This Court has never held that one offense qualifies under one and not the other. So to the extent White made that statement, the two are very close. And even if the ACCA is broader, I would submit that Florida Purchase does not – the ACCA is not broad enough to encompass Florida Purchase. Well, take it this way. Involving – you must assume, because White and James say, that involving is broader. And purchasing is the first step in the possession with intent to distribute chain, is it not? Unless you are growing your own or creating your own cocaine in the United States, and I don't think we're growing it here, you've got to buy it somewhere. So purchase, could it not be viewed as within the ambit of involving because purchase is the first step in actually possessing with intent to distribute? Well, I have a couple points to that. First, I want to note that James just said that involving was broader than to have as an element. And that's something we agree with. Mere purchase, I would submit, is not the first step in the chain. Like we submitted in our briefs – as we submitted in our briefs, the Swider case shows that you can purchase for personal use. So you are essentially an end user, much like someone who is a simple possessor. And we know that simple possession doesn't qualify under the ACCA. That was just the – I mean, he was convicted under a statute that we have interpreted as meaning when you have that quantity of drugs, you can say all day long, you know, I'm purchasing for my personal use. That quantity, we attribute the intent to possess with a distribute. And so that case, when they're talking about personal use as I read it, they were talking about this is an explanation, we tend to believe him here and we'd like to give him a lower sentence. I didn't see that as interfering in any way with the elements of that crime. Well, it wasn't a holding because we know that intent to distribute isn't an element. But it does show that there is at least a reasonable probability that in Florida, you can be convicted of mere purchase, purchasing just for personal use under the statute. I think you would be hard-pressed to find many cases talking about personal use because intent to distribute isn't an element. But this was a unique situation because the State wasn't just saying we can't prove intent to distribute. The State was affirmatively saying these two men purchased for personal use. They were longtime addicts. But you're getting – now you're trying to overturn James, which says we don't care what the defendant says. That's a different issue than what we're talking about now in purchase. And that's my other point. This Court has never held that trafficking by purchase of 28 grams allows you to infer an intent to distribute. James was about trafficking by possession of 200 grams of cocaine. So it necessarily could not have held anything with regard to Mr. Conagy's conviction because Mr. Conagy's conviction involves purchase and it involves a lower quantity. I understand a lot of the reasoning in James could be applied to Mr. Conagy's conviction, but there are a few reasons why it shouldn't, namely the Swider case, which shows that you can purchase for personal use. And — Is Swider the only case for that proposition from the State court? It is our only case for the – for the purchase prong, yes. And – but like I said, I think that makes sense because you – it is difficult to find cases talking about something that's not an element and something that's just an inference that this Court has made in the past with regard to other quantities and other statutes. What's your response? I understood Judge Julie Kearns to be suggesting that Swider, although it's referring to purchase, isn't dispositive of the question because it arrives in a setting in which the purchase is being looked at in a context other than a pure conviction. Well, I think that if I'm understanding her question correctly, I agree that it wasn't part of the holding, but it – because it was so critical to its reasoning and its analysis about the defendant's sentences, Swider illustrates that — Well, would it necessarily be true in all cases? I'm sorry. What? Would the rationale that you used in that case be used in all cases? I mean, what I'm trying to do is to decide if it's the State law determination that's binding on us under Johnson and under a long line of our cases. But what I understood Judge Julie Kearns to be raising is to say, well, exactly what – we need to know exactly what that Florida case holds before we are bound to give it credence. Well, I think Swider is important because before you can give this inference of an intent to distribute just based on the optics of the fact that this is the highest tier, it's important to look at Florida case law because that tells us how defendants are actually being prosecuted, how courts are actually applying the law, rather than just making inferences about the Florida legislature. But I do want to add, because I see my time is expiring, that even if you were to assume an intent to distribute, it still doesn't qualify as a serious drug offense because – both because of the Shannon court's reasoning and also because of the plain meaning of involving. Okay. Thank you, counsel. Thank you. Ms. Gershel. Good morning, Your Honors, and may it please the Court. Connors' argument for why Florida's most serious drug crime, the trafficking of illegal drugs, does not qualify as a serious drug offense under the ACCA is inconsistent with this Court's precedent in James and White, which established the following three things. One, an offense can qualify as a serious drug offense even if it does not have as an element the manufacture, distribution, or possession of drugs with intent to distribute. Two, intent to distribute can be inferred under Federal law even if a defendant can be convicted for trafficking by possession without a finding that they had an intent to distribute those drugs. And three, that intent to distribute is inferred under Florida's drug trafficking statute based on the quantity of the drugs involved and its placement at the top of the three-tiered scheme. Now, I'd like to go to some of the arguments that Ms. Song made with respect to what does purchase mean. Purchase means to buy, and so this is someone who has bought drugs. And Swider does not stand or go as far as Ms. Song contends because in Swider, the defendant was pled guilty to arguably possess, purchase, trafficking by purchase, but if you look at a later case involving Swider, if you shepherdize it, there's a later case, and in that case it says that they pleaded guilty to trafficking by possession. So we don't even really know. All we know is that they pled guilty to drug trafficking, but the Court wasn't determining the elements of drug trafficking in this case. They were merely determining whether they weren't entitled to a reduced sentence under the First Time Offender Act. And similarly with Ross and Roberts, the cases that were talked about in Shannon, in Roberts, the Court actually said this person could have been convicted for attempted trafficking by possession, but that's not what the Court charged them with. So the difference between purchase and possession is very narrow. And in the cases in which somebody is purchasing drugs and not possessing them, well, that's obviously something that entails distribution because if you're not purchasing the drugs for your own personal use, it has to be purchasing them for someone else, which is distribution. But if you purchase the drugs by giving the money, and the drugs are not actually delivered to you or to the person you wanted them delivered to, it is my understanding Florida law said that that's not possession. Florida law says that's not possession, Florida law says that's purchase, but if you look at what the conduct actually is. So you can have purchase without possession? You can. So you can have purchase without possession with intent to distribute? Not under the way this Court has interpreted the statute, which is that there's an inferred intent to distribute from the conduct. But what I'm saying under Florida law, Florida law, you have a trial in Florida and you get to the charge conference and the defense attorney says, Your Honor, they're charging him or have charged him with possession with intent to distribute. And as you know, there's a dispute in the facts. The jury is going to decide as to whether or not he actually ever took delivery of the drugs, whether they ever actually got to them. So I would like a jury instruction from you to the jurors who are going to decide this case that you can be guilty of purchasing without actually possessing. That would not be the defense counsel, that would be the prosecution asking for that. The defense counsel could say, I would like you to charge the jury that he didn't possess simply because he purchased, and the charge is possession. They'd both be entitled to those instructions, would they not, under Florida law? And the jury could come back and convict him of purchase without possession. That's correct. You're saying that, and that may be so, but again, from my all-night research, I'm told pretty late, I would like from either of you somebody to tell me what you say is accurate, you can purchase without possessing, what are the elements of purchasing? And I'm just having trouble in Florida law figuring out what that is. I agree, and I've had trouble with that as well, Your Honor. But you just answered Chief Judge Carnes that you could, but you're not clear why that is. You don't know what Florida law says that. Well, I mean, they do have different It's an undefined element. There's no definition of it in the statute. It's not even an undefined element, it's an undefined means. Undefined means. Because, you know, this Court in Cintron said these are just different ways of committing trafficking. Why is it the answer that apparently, and this is an inference of a different kind, but apparently the elements of purchasing in Florida law are that you give money for drugs and you've given the money, period. Correct. And an element is not that the drugs are actually delivered, or that you actually possess them. That's correct, Your Honor. And it would have to be, excuse me, and it would have to be that constructive possession is not enough. Well, constructive possession is enough because the Florida statute says actual, or knowing the actual and constructive possession. It's just that I think it's this Court noted. Well, then that's a hopeless confusion. Because if you purchase drugs, you have the right, not legal right, obviously, but you have the right under the illegal purchase contract, if we can call it that. You have the right to say what happens to those drugs. You gave money for them. That's constructive possession. I agree with you, Your Honor. Unfortunately, I don't think that that's what the Florida cases said, or at least that's what this Court said when it was interpreting Florida case law in Shannon. Of course, if the Court wants to look at it anew, I would say that absolute purchase is just actual or constructive possession, or attempted actual or constructive possession. In other words, if I'm going to give you money, the purchase is not really the Merriam-Webster definition. It's not really, the purchase is not complete until the item you bought has been delivered. Correct. And we're all guessing. Right, right. Because we're just making up things as we talk here. To maybe illuminate our educated guessing, if you look at the evidence And it's on the is not close enough to possession of intent to distribute. It's up to them to show us the daylight between those two and why that's any different. A common sense interpretation is purchase, you've got to have possession for purchase. And it's certainly possession adjacent, close enough that it falls within the definition of a serious drug offense, which is something that involves possession with intent to distribute, involves distribution. Well, what happens if you buy something and you give it to somebody else? Then that would be a distribution. I mean, if I buy a pair of shoes for my wife and they're delivered to her, did I take possession of the shoes at any time, constructively or otherwise? You, you, you, well. Did I? Yes or no? Yes, you did take constructive possession because you directed where those shoes would go. And so at that point, that's constructive possession when you have the ability to. You're saying that's constructive possession? Correct. When you have the ability to direct how something is being treated, that's constructive possession. It's been reduced to your control. Just like if a drug trafficker, a kingpin, purchases drugs from another kingpin. His role in the deal is he's just the one that buys it and he's told by somebody else where it's supposed to go and he gets a fee, gets paid a fee for doing it. I'm sorry, I didn't hear. The person, the kingpin, you said, he gets his job in the whole series of things is simply to make the purchase. He's told in advance. He doesn't even know where it's going. Correct. All he knows is that he's supposed to go give the money to Ray and he gets paid a fee for it. And that's what he does. That's what? He purchased it. That's what? Yes. And he doesn't even know where it goes. Is that possession? It might not be possession, but it's distribution because they're purchasing the drugs in order to put them into the market and deliver them to other people. Would it be fair to say that this is, Florida law is unclear on this? I think that would be fair to say. And you know, we have a procedure for clearing up state law issues when the case depends on them and it certainly seems, this one certainly seems to depend on that. Hopeless confusion in the Florida law, it's more of a doesn't make sense, surely they didn't mean that kind of confusion. We could certify this issue to the Florida Supreme Court. They've always been good about answering our certified questions. What about that? You've heard, Your Honor, but again, I don't really think that this case rises and falls on whether purchase is encompassed by actual or constructive possession. Because even if there are ways to purchase without ever taking actual or constructive possession, that under the plain meaning of the word involving, that when you are purchasing drugs and not taking actual or constructive possession, then you are doing that for the purposes of distributing them. Or else you're doing, so there's two ways in which you could purchase. One is you could purchase, the money could be exchanged, money could exchange hands, and you're arrested before you have a chance to actually take possession. And that seems to me to fall under James, which has already said that when you possess or attempt to possess a distribution quantity of drugs, that that qualifies as a serious drug offense. The other way in which you can purchase drugs is with purchasing them without the, without taking possession, without ever having the intent to take possession. And in that case, that's something that clearly involves distribution, because you're purchasing it for somebody else. It's axiomatically not for personal use. And again, James already resolved that just because the Florida statute allows for conviction for personal use doesn't mean that this Court can't infer intent to distribute. This Court infers intent to distribute based on the quantity of the drugs involved and the placement of the statute at the top of the three-tiered scheme. Those apply equally when somebody traffics. Can we do that inference as a matter of Federal law? Yes. That's what the Court said, because in James. Where do we get the authority to do that? The Court cited to take. I thought State law is what we look to to decide what the nature of the State law offense is. So in James, the Court said we look to the State law to look at the elements of the offenses. But whether intent can be inferred is an issue of Federal law. And the Court in James specifically acknowledged the Supreme Court's case in Gibbs, in which the Supreme Court said simple possession and trafficking by possession have the same elements for the purposes of double jeopardy. So we know that a person can be convicted under Florida law of trafficking by possession without a jury or without pleading guilty to having the intent to distribute. So James really disposes of the key points in their argument. And the Court had the opportunity to revisit James in White. And in White, the Court reaffirmed James post-Siskamps, post-Mathis, post-Moncrief, post all of these cases that might have changed the analysis. And it said James' reasoning still applies. Not only that, but in White, the Court specifically said that 28 grams of cocaine is the distribution quantity of drugs from which an intent to distribute can be inferred. Have we been talking? This is relatively new to me because I come from the Federal circuit where we ordinarily do a different body of law. And I understand how one looks at an indivisible statute on a categorical analysis. And that sounds to me as if we've been talking sort of over in that side of the fence. My understanding in your brief is that you come in with what I think is a new theory of core criminality that obviates the need to worry about a categorical analysis altogether. I would... I don't know how you want to use your time, but that seemed to me to be the thrust of your argument in your brief. It's not the thrust of the argument. It's an argument that I want to advance because while it doesn't necessarily make a difference in this case because all of the ways of trafficking qualify as a serious drug offense, I wanted to point out for future cases where it might make a difference because we just sort of assume that you look at this least culpable conduct analysis in the context of a serious drug offense. But all of those cases that originate in cases that require a comparison of elements to elements. Do the elements of this offense, the state offense, categorically match the elements of the generic crime? Does this offense have as an element the threatened use of physical force? But with the context of a serious drug offense, with a serious drug offense, what James has said about the definition of a serious drug offense is it's not a comparison of elements to elements. So it doesn't seem... James doesn't use a least culpable offense analysis, right? Correct. Right. And isn't that the correct way you go about deciding these cases these days? If you just start with a proposition that's the first time I ever had one of these cases and the first question I ask is, is the statute divisible or indivisible? Isn't that the first question? Correct. And so that question's been answered in this Court. This is an individual statute we're dealing with, right? Correct. And then there are rules. And what do I do next if I have an individual statute? Don't I look to see what the least culpable offense is? That is how the Court has... No, but I'm just saying if I were coming... Forget about what the existing body of law is. I'm trying to decide whether James is correct. I would say that the Court looks at this statute as a whole and says, what is... Aren't you required to look for the least culpable offense as the first step in the categorical analysis? No. No? I don't think so when it's an indivisible statute and you're looking at the serious drug offense. Well, that's what I was trying to get at, because that's what I think your core analysis says you don't... We throw under the bus the categorical analysis looking for least culpable offense in sort of a step-down menu. I see my time is running out, but if I could just address... Yeah, proceed with that. What you're saying basically is involving as a game changer, right? Correct. And it doesn't mean throw out the categorical approach. You still look at the offense as the elements define it, not as the conduct that the person commits. It's just that when you're looking at the elements of the offense under the indivisible statute under the serious drug offense, you don't have to look at, go down the rabbit hole of what are every hypothetical way in which this could be committed. You just say, is this a case that involves manufactured distribution and or possession with intent to manufacturing distribution? And here this is clearly a case that... Not is this a case, but is this a crime? Right. I'm sorry. Is this a crime? Okay. Okay. Thank you, counsel. Thank you. Ms. Song, four minutes. I apologize for some of the confusion relating to Florida law, and I agree that if this court did want to certify a question as to, you know, whether you can infer an intent to distribute or whether you can purchase without possession, I do think that would be appropriate. But I think... It's not so much whether you can infer in an individual case. It's whether it necessarily involves. Right. Right. But I did want to... But my problem with that is, and you are here arguing that there's something quite distinct about purchase and possession. And I think you can argue from a common-sense point of view, maybe not, just to end. So you want to go back to Florida law and kind of create that which you need to make your case. Well, I think one thing I should have brought up earlier is that we know at a minimum that purchase cannot be possession because possession is already in the Florida statute. So we know just based on basic rules of statutory construction that it has to be something different. Well, couldn't it be the same? I mean, the second they hand it to you, you purchased it and you possessed it? But you don't need to be handed the drugs. But what I'm saying about the Florida statute is that the fact that they lay out both purchase and possession tells us that they are different crimes or else they wouldn't need to both be separately enumerated in the statute. But I'm assuming that you've really scoured this much more than I have. And you're just not finding anything in Florida law that gives us the elements of purchase. Well, I think the Florida cases that we have in Swider and in the cases in Shannon are illustrative of the types of... I understand that Swider doesn't really go into the facts of what exactly... I mean, Swider doesn't hint that he didn't possess them. I mean, they just said, as the opposing counsel said in the Supreme Court, they described it as possession. Right. But I believe in the cases discussed in Shannon, I think one of the defendants, he made a phone call and said, hey, I know someone who wants to buy drugs. So he was sort of, you know, he never intended to possess the drugs. He was never going to possess the drugs. And that was critical to Shannon's reasoning. If you read... But Shannon was our decision of purchase, not what the Florida court's decision of purchase means, right? But Shannon looked to Florida case law to decide what purchase meant. And I think it's really important to read James and Shannon in succession, because if you do, you'll see that James really doesn't control the issue here. The Shannon court, when it looked at James, it acknowledged that in some ways its holding could be seen as being at odds with the holding in James because of how closely this court has always interpreted ACCA and the guidelines. And it said, our decision is still coherent with James because of the difference between purchase and possession, not because of the slight difference between ACCA and the guidelines. I'd also like to talk about the meaning of the word involving, which the government brought up, because I think there are a lot of different tracks that this argument can go, not just Florida law, but just what exactly does ACCA involving mean. This court has already defined involving in shields in a different context to mean to have as a necessary part. That comports with how the Fourth Circuit and the Ninth Circuit have defined involving in the context of serious drug offenses. And that comports with how we've used the word involving in other parts of the ACCA, in the residual clause, as well as other parts of the violent felony definition. I think the Ninth Circuit's reasoning in Franklin is really helpful on that point of what involving means and why it's so important to take a more measured view of that word. If you look at the question I mentioned before, though, we've already determined in James and White that you can infer that a certain quantity of drugs, if possessed, we can attribute the intent to distribute based on that. That's well settled now. If you are purchasing that quantity of drugs, which we know is enough to infer an intent to distribute, you are purchasing, that is the first step, is it not? I give you the money, you hand me the drugs, I give you the money, I direct you give the drugs to somebody else. The purchase makes no sense without the possession of that, which we said is sufficient. To me, one could well argue involving would bring that first step in the possession of the intent to distribute chain of events into play. And tell me why you think that's wrong. Well, two points to that. And I see my time has expired, may I? So, James and White didn't say that every single time you have a certain quantity or you have an offense in the highest tier, you can automatically assume an intent to distribute. In those cases, they did based on what they had before them, but they didn't have any state case law that would suggest anything to the contrary. And indeed, in White, the defendant tried to make an argument that, well, you know, the least culpable way of committing this statute could be committed without intent to distribute. But the court said, well, you don't have any Alabama state case law to back you up. So this situation is different. And then also, I would just add that I believe the government is saying every single time you have an intent to distribute, that counts as distribution. And that simply can't be true because the serious drug offense definition is very specific that it is crimes involving manufacturing, distribution or possession with intent to distribute or manufacture. There would be no need to enumerate possession with intent to distribute if intent to distribute was enough. The fact that you have distribution and possession with intent to distribute side by side shows you that they were clearly targeting very specific types of offenses. And one last question. I know your time's up. Just to be clear, we're all on the same page. Your position is essentially, if you prevail, that we're overruling James and we're also holding, then, that this drug trafficking statute of Florida can no longer be an ACCA predicate. That will be the outcome of your argument, correct? You wouldn't be overruling James to the point that you can infer an intent to distribute. But let's say the James case comes up after we rule your way and the next week we have exactly the same facts in James, exactly everything, that person would no longer be guilty, would no longer be sentenced under the ACCA, correct? That person would be in a very different procedural posture because we would no longer be able to look to his Shepherd documents to see whether or not he committed possession. He loses. It's an indivisible statute because there's this word purchase thrown in. We don't, none of us know what it means and it hardly ever seems to be prosecuted. But that gratuitous word means that everybody walks even though we could, because it's indivisible, right? Right. After, after Cintron, we know that it's indivisible. So that defendant in James, now that he would be in a different posture, in a different legal posture, we would be assuming purchase and he should not be an armed career criminal. But he would be in a very different posture. Thank you. Thank you, counsel. We'll take that case under submission. We're going to take a 10-minute break before we get to the third case.